12UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COREY REISSLAND,

                            Plaintiff,

              v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                            Defendant.

Case No. C12-678-BAT

**ORDER REVERSING THE
COMMISSIONER AND
REMANDING FOR FURTHER
ADMINISTRATIVE
PROCEEDINGS**

Corey Reissland seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  Mr. Reissland contends the ALJ erroneously (1) rejected medical opinion evidence; (2) discounted his testimony and the lay testimony; and (3) found he could perform his past work at step four.  Dkt. 12.  As discussed below, the Court **REVERSES** and **REMANDS** the case for further administrative proceedings pursuant to sentence four.

## BACKGROUND

At steps one and two, the ALJ found Mr. Reissland last engaged in substantial work activity on January 30, 2009 and that sarcoidosis, asthma, obstructive sleep apnea and narcolepsy, headaches, and hypertension were severe impairments. The ALJ found at step three

1    these impairments did not meet the requirements of a listed impairment.[1]  The ALJ found Mr.

2    Reissland had the residual functional capacity ("RFC") to do sedentary work, limited to lifting

3    10 pounds occasionally and less than 10 pounds frequently, and standing and walking no more

4    than 2 hours in an 8-hour day.  The ALJ found Mr. Reissland could not climb ladders, ropes, or

5    scaffolds; must avoid concentrated exposure to extreme cold; and must avoid even moderate

6    exposure to respiratory irritants, such as fumes, odors, gases, dusts, and poor ventilation. The

7    ALJ found at step four Mr. Reissland could perform his past work and was therefore not

8    disabled.  As the Appeals Council denied Mr. Reissland's request for review, the ALJ's decision

9    is the Commissioner's final decision.  Tr. 1-6.

**DISCUSSION**

**A.    The ALJ's assessment of Mr. Reissland's credibility.**

12          Mr. Reissland contends the ALJ improperly discounted his testimony.  To determine

13   whether the ALJ's credibility findings are supported by substantial evidence and free of legal

14   error, the Court examines the reasons the ALJ actually relied on in making that determination—

15   not grounds the ALJ did not utilize.  As such, Mr. Reissland's discussion of Anne Mahoney's,

16   M.D., Dan V. Phan's, M.D., and Zori Stoliova's M.D., opinions regarding his credibility are

17   irrelevant; the ALJ did not rely on their opinions to discount Mr. Reissland's credibility and thus

18   neither will the Court.

19          The ALJ found no malingering and was required to provide clear and convincing reasons

20   to discount Mr. Reissland's testimony about the extent of his impairments.  *Carmickle v.*

21   *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160–61 (9th Cir. 2008).  The ALJ gave two reasons

22   to discount Mr. Reissland's testimony about the nature and severity of his limitations.  First, the

23

[1] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 2

ALJ found Mr. Reissland:

> was fired for writing prescriptions for himself. He has subsequently attended a narcotics diversion program. (Ex. 12F at 1-2) However, it is a critical fact of this case that he separated from his job at Virginia Mason due solely to non-medical reasons. In fact, he was working despite his physical impairments. (Ex. 16F at 102-103). There's no indication on file that his objective symptoms deteriorated on or around January 2009 to rise to the level of disability. Indeed, a review of the records on file demonstrates that although his conditions have caused obvious distress, he is [sic] nonetheless remains capable of performing sedentary work.

Tr. 20.  Mr. Reissland does not dispute he was working at Virginia Mason hospital during the relevant period and was fired for writing prescriptions for himself.  He argues, however, the ALJ erred by ignoring his testimony that when he was fired, he had health problems affecting his ability to work.  Dkt. 16 at 23.  The argument is unpersuasive.  First, as the credibility of Mr. Reissland's testimony is at issue, his testimony alone cannot establish he is credible.  In other words, a claimant cannot simply contend his testimony is credible because he has testified to it.  Otherwise, an ALJ would always be required to accept a claimant's testimony, contrary to the rule an ALJ need not accept every allegation a claimant makes regarding his or her impairments.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Second, there is no dispute that before Mr. Reissland was fired from his job at Virginia Mason hospital, he engaged in substantial work activity during the period he claims he was disabled.  This is therefore not a case in which the ALJ discounted Mr. Reissland's testimony because he attempted to work for a brief time.  *See, e.g., Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (Claimant's attempts to work outside relevant time period for a short period of time—nine weeks—are not grounds to discount claimant's testimony.).  Rather, it is a case in which during the relevant time period, Mr. Reissland worked for two years at Virginia Mason hospital as a customer services representative.  Tr. 182.  He separated from that job because he

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 3

1   was fired for writing prescriptions for himself.  Tr. 35.  The record thus shows despite his claims

2   of impairment, Mr. Reissland performed gainful work activity during the time he claimed

3   disability, and left his job because he was fired for writing prescriptions for himself.  The ALJ

4   relied on these facts to discount Mr. Reissland's testimony about the severity of his impairments.

5   The Court would be hard pressed to find such reliance to be unreasonable or improper.

6          The ALJ also discounted Mr. Reissland's testimony on the grounds he was:

7                able to do most daily activities, including basic hygiene, personal
                 care, preparing simple meals and caring for a pet. The claimant
8                goes outside at least once a day, has a driver's license and
                 frequently attends Bible study classes and does church witnessing
9                work, although this is limited, compares to his past activities.

10  Tr. 20.  These are minimal daily activities and the ALJ thus improperly penalized Mr. Reissland

11  for attempting to live a "normal" life in the face of his limitations.  *See Reddick v. Chater*, 157

12  F.3d 715, 722 (9th Cir. 1998).  The Ninth Circuit "has repeatedly asserted that the mere fact that

13  a plaintiff has carried on certain daily activities . . . does not in any way detract from h[is]

14  credibility as to h[is] overall disability."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.2007)

15  (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)).  None of the activities the ALJ

16  cited are readily transferrable to a work setting or contradict Mr. Reissland's testimony.

17  Accordingly, the ALJ erred in discounting Mr. Reissland's testimony based on his daily

18  activities.

19          This error was harmless however as there remains substantial evidence in the record to

20  support the first reason the ALJ gave to discount Mr. Reissland's credibility.  *Carmickle*, 533

21  F.3d at 1162–63.  The Court therefore affirms the ALJ's finding that Mr. Reissland is not fully

22  credible.

23

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 4

**B.    The ALJ's evaluation of the medical evidence**

Mr. Reissland contends the ALJ erred in assessing the opinions of Julie Hodapp, M.D., Kristopher Rhoads, Ph.D., and David Jarvis, M.D.

*1.    Julie Hodapp, M.D.*

Mr. Reissland takes issue with the ALJ's assessment of the opinions contained in treating doctor Julie Hodapp's M.D., September 2, 2009 letter.  In the letter, Dr. Hodapp stated she "believe[d] that [Mr. Reissland] is currently not able to work but over the next 12 months we should be able to make some improvement on that end." Tr. 399.  The ALJ rejected this opinion on the grounds "the 12-month timeline is obviously arbitrary and subjective in nature . . . the claimant has shown improvement to the extent he now rides an exercise bicycle (Ex. 18F at 3)." Tr. 24.  Mr. Reissland argues the ALJ erred in giving "vague and unfounded" reasons to reject the doctor's opinions and that a claimant's ability to exercise "does not mean one is not disabled." Dkt. 12 at 11.

As the Commissioner points out, an ALJ need not give "controlling weight or special significance to a doctor's opinions regarding the ultimate issue of disability as that question is reserved to the Commissioner.  *See* Social Security Ruling (SSR) 96-5p.  This is particularly apropos here, as Dr. Hodapp's own records support the ALJ's finding that Mr. Reissland "has shown improvement."  On August 3, 2009, Dr. Hodapp examined Mr. Reissland and noted "he reports he is doing okay on his morphine." Tr. 403.  Dr. Hodapp again examined Mr. Reissland on August 31, 2009, and noted during physical examination he exhibited "no pain behavior."  Tr. 402.  A month later, Dr. Hodapp wrote the letter at issue indicating Mr. Reissland was unable to work.  Tr. 399.  A little more than a month later, on November 2, 2009, the doctor noted "things

have been pretty stable.  He continues to participate in the drug diversion program.  He is doing

well.  He has had no issues with pain." Tr. 397.

Mr. Reissland argues that Dr. Hodapp's 2010 records showed he did not improve.  In

specific he contends in January 2010, his pain worsened when Dr. Hodapp took him off

morphine and began treating his pain with fentanyl. Dkt. 11 at 29.  This ostensibly shows the

ALJ erred in finding Mr. Reissland's pain was improving. This argument is not supported by Dr.

Hodapp's records.  On February 26, 210, Dr. Hodapp noted "the patient reports he has been

doing pretty well since his last visit.  We stopped the morphine and put him on the fentanyl patch

and that has been working better." Tr. 433.  Mr. Reissland thereafter missed several follow-up

visits.  When he finally saw Dr. Hodapp on June 28, 2010, the doctor reported:

> it is now over a month after he was supposed to be out of his pain
> medication and he is finally here for follow up.  He tells me today
> that he had actually saved a couple of his patches from previously
> and so somehow he was able to make these two patches last for an
> entire month.  I do not quite under [sic] logistics of how that would
> work given that the patches are supposed to last for three days each
> but he reports he just was doing his best to get by and a having a
> lot more pain.

Tr. 429.  As a result of this course of events, Dr. Hodapp declined to prescribe Mr. Reisser any

pain medications on June 28, 2010, and asked the lab technicians to check "if there are any

medications that cross react with methadone." Tr. 430.  Given the record, the ALJ did not err in

discounting Dr. Hodapp's  September 2, 2009 opinions.

### 2.   *Kristopher Rhoads, Ph.D., and David Jarvis, M.D.*

The ALJ found Mr. Reissland's anxiety disorder was a medically determinable condition

but that the condition did not more than minimally limit Mr. Reissland's ability to work.  Tr. 15.

As a consequence, the ALJ concluded anxiety was not a severe impairment at step two. *Id.*  Mr.

Reissland has not contended the ALJ erred at step two.  Instead, he argues the ALJ erred in

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 6

1  failing to further develop the record regarding his anxiety in light of the opinions Drs. Jarvis and

2  Rhoads gave.  Dkt. 12 at 13-14.

3      David Jarvis, M.D., performed a "psychiatric evaluation for social security disability"

4  (Tr. 319) in which he diagnosed Mr. Reissland with generalized anxiety disorder, panic disorder

5  without agoraphobia and "possible pain disorder."  Tr. 325.  Dr. Jarvis noted Mr. Reissland

6  "reports symptoms of generalized anxiety, panic disorder without agoraphobia, but sees his

7  physical medical symptoms as his primary limitation with respect to employment. His history

8  and interview presentation are consistent with that appraisal."  *Id.*  The doctor opined Mr.

9  Reissland's "anxiety disorder, with panic episodes, in and of itself would not appear to create

10  more than mild limitations with respect to employment."  Tr. 326.

11      Dr. Hodapp referred Mr. Reissland to Kristopher Rhoads, Ph.D., for a "pain

12  psychological examination."  Tr. 365.  Dr. Rhoads saw Mr. Reissland twice.  On August 3, 2009,

13  he examined him and noted "fairly significant anxiety"; however, Dr. Rhoads offered

14  no opinions as to Mr. Reissland's functioning.  On August 31, 2009, Dr. Rhoads did a "follow

15  up" examination and noted Mr. Reissland indicated his pain was improved, and that he was

16  engaging in social activities.  Tr. 452.  Dr. Rhoads reported "[o]verall, Mr. Reissland appears to

17  be doing fairly well and making some progress."  *Id.*

18      Based on Dr. Rhoad's and Dr. Jarvis's opinions, the ALJ found "there is no evidence that

19  the psychological symptoms create more than mild barriers to employment."  Tr. 16.  The ALJ

20  further found that this finding was consistent with the opinions of the non-examining doctors and

21  the testimony Mr. Reissland gave before the ALJ in which he indicated medications were

22  controlling his anxiety "a bit better."  Tr. 51.

23      Mr. Reissland does not contest these findings.  Instead, he argues since Dr. Rhoads did

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 7

1   not offer any opinions as to how anxiety affected his functioning, and Dr. Jarvis "did not specify

2   functional areas," the ALJ should have developed the record further on the extent to which

3   anxiety affected Mr. Reissland's ability to work.  Dkt. 12 at 13-14.  The Court disagrees.

4         An ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v.*

5   *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  But an ALJ's duty to further develop the record is

6   triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper

7   evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).[2]

8         Dr. Rhoads provided no opinions as to whether anxiety limited Mr. Reissland's ability to

9   work.  Alone, Dr. Rhoad's opinion was insufficient to determine the extent to which anxiety

10  limited Mr. Reissland's ability to work.  But the record also contained the opinions of Dr. Jarvis.

11  The record clearly showed Dr. Jarvis diagnosed Mr. Reissland with anxiety and opined the

12  condition with panic episodes caused mild work limitations.  There is nothing unclear or

13  insufficient about this opinion.  To be sure, Dr. Jarvis could have been more detailed, as Mr.

14  Reissland argues.  But this is an argument that attacks the weight the doctor's opinions should be

15  given, and that fails to show the opinions were ambiguous or insufficient.

16        In sum, examining doctor David Jarvis, M.D., clearly opined Mr. Reissland's anxiety

17  caused mild limitations.  The record thus does not evidence ambiguity about Mr. Reissland's

18  anxiety that needed further development; further, there was sufficient evidence about this

19  impairment to allow the ALJ to evaluate it without further development of the record.  Mr.

20  _____

21  [2] *See also* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (providing that when evidence received
    from a medical source is inadequate to determine whether a claimant is disabled, that source will

22  be re-contacted to seek additional evidence or clarification, but only when that source's report
    "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary

23  information, or does not appear to be based on medically acceptable clinical and laboratory
    diagnostic techniques").

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 8

1   Reissland attacks the opinion on the grounds it failed to identify specific functional areas.  This

2   is an attack on the weight the opinion should be given, not its purported ambiguity or

3   insufficiency.

4          As Mr. Reissland bears the burden of showing the ALJ committed reversible error, and

5   has failed to do so, the Court affirms the ALJ's evaluation of the medical evidence.  The Court

6   further rejects Mr. Reissland's claim the ALJ should have developed the record regarding

7   anxiety.  *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012).

8   **C.     The ALJ's assessment of the lay testimony**

9          Mr. Reissland contends, and the Court agrees, the ALJ erred in discounting the testimony

10  of his wife and his father.  Dkt. 12 at 18.  Lay witness testimony is an important source of

11  information about a claimant's impairments, and an ALJ can reject it only by giving specific

12  reasons germane to each witness.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294,

13  1298 (9th Cir. 1999).

14         Here the ALJ rejected the lay testimony on the grounds "[t]he cumulative effect of lay

15  witness observations cannot be an allowance of disability benefits where the objective medical

16  evidence does not warrant it." Tr. 24.  This vague and conclusory reasoning falls far short of the

17  requirement that an ALJ provide specific and germane reasons to discount a lay witness's

18  testimony.  Additionally while an ALJ may discount lay testimony on the grounds it is

19  inconsistent with medical evidence, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), an

20  ALJ may not discredit lay testimony on the grounds it is "not supported by the objective medical

21  evidence." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).  But this is exactly what the

22  ALJ did in rejecting the lay witnesses's testimony.  The ALJ did not find the lay testimony was

23  inconsistent with the medical evidence.  Instead, the ALJ incorrectly rejected the lay testimony

1    on the grounds "the medical evidence did not warrant it."  Accordingly, the ALJ erred in

2    discounting the testimony of Mr. Reissland's father and wife.

3         This error was not harmless.  Mr. Reissland's wife and father testified Mr. Reissland could

4    not concentrate, suffered tremendous uncontrolled pain and severe fatigue, slept incessantly, was

5    depressed, angry and frustrated, and was unable to perform many household chores.  *See, e.g.,*

6    Tr. 254-56.  The ALJ rejected the testimony and consequently did not include any of the

7    limitations the lay witnesses observed in assessing Mr. Reissland's residual functional capacity.

8    Because the Court cannot confidently conclude that no reasonable ALJ, when not making the

9    same error as the ALJ, could have reached a different disability determination, the Court finds

10   the ALJ's error was not harmless.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

11   (9th Cir. 2006).

12   **D.     The ALJ's step four findings**

13        Mr. Reissland also argues the ALJ's step four findings were insufficient to support a finding

14   that Mr. Reissland could perform his past work.  An ALJ's step four findings involve an

15   assessment of a claimant's residual functional capacity, the physical and mental demands of the

16   past relevant work, and the relationship between the claimant's RFC to the past work.  Because

17   the ALJ erred in discounting the lay testimony, and the matter must be remanded to reassess the

18   lay testimony and potentially Mr. Reissland's residual functional capacity, the Court need not

19   resolve whether the ALJ made requisite findings to support his step four conclusion at this point.

20                                              **CONCLUSION**

21        For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is

22   **REMANDED** for further administrative proceedings, pursuant to sentence four as follows.  The

23   Court affirms the Commissioner as to the ALJ's step two findings, evaluation of the medical

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 10

evidence and Mr. Reissland's credibility.  On remand, the ALJ shall reevaluate the testimony of the lay witnesses, Eman Reissland and PJ Stephens, reassess Mr. Reissland's residual functional capacity as needed and proceed to steps four and five as necessary.

DATED this 14th day of December, 2012.


BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 11